## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| **MURRAY D. FORD**<br>3204 Grey Dolphin Drive<br>Las Vegas, NV 89117 | Case No. |
| and | Judge |
| **GEORGINA FORD**<br>3204 Grey Dolphin Drive<br>Las Vegas, NV 89117 | <u>**COMPLAINT FOR DAMAGES**</u> |
| Plaintiffs, | |
| v. | |
| **NATIONSTAR MORTGAGE LLC**<br>c/o CSC Services of Nevada, Inc.<br>2215 Renaissance Dr., Suite B<br>Las Vegas, NV 89119-6727 | |
| Defendant. | |

Now come Plaintiffs Murray D. Ford and Georgina Ford, by and through counsel, and hereby state as follows for their Complaint against Defendant Nationstar Mortgage LLC:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.      Plaintiffs Murray D. Ford and Georgina Ford (collectively referred to as "Plaintiffs" or the "Fords") are the owners of real property located at and commonly known as 3204 Grey Dolphin Drive, Las Vegas, NV 89117 (the "Property").

2.      The Fords, all times relevant, have maintained and currently maintain the Property as their primary, principal residence.

3.     The Fords at all times relevant, were each over the age of sixty (60) and were each an "Older person" as that term is meant pursuant to Nevada Revised Statutes (NRS) 41.1395(4)(d).

4.     Defendant Nationstar Mortgage LLC ("Defendant" or "Nationstar") is the current servicer of a note (the "Note") and a deed of trust on the Property that allegedly secures the Note (the "DOT") (collectively referred to hereinafter as the "Loan").

5.     Nationstar has been the servicer of the Loan since July 1, 2013.

6.     Nationstar is and at all times herein was acting as a default mortgage servicer for the Loan and was at all relevant times herein a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* (TILA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

8.     This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, *et seq.*, of Regulation X.

9.     This action also arises out of defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") as well as breach of contract by Defendant.

10.     This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. §1367.

11.     Venue lies in this District pursuant to 28 U.S.C. §1391(b) as the Fords maintain the Property as his primary residence.

## INTRODUCTION

12.     The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

13.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14.     Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

15.     The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

16.     Nationstar is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

17.     The Fords are asserting claims for relief against Nationstar for breaches of specific rules under Regulation X and Regulation Z, as set forth, *infra*.

18.     The Fords have a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## BACKGROUND

19.     The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

20.     The Fords obtained the Loan in or about August 2004 in the initial amount of $367,500.00.

21.     In 2007, Mr. Ford suffered a heart attack and underwent open-heart surgery.

22.     Mr. Ford's medical condition and treatment started a slippery slope from which the Plaintiffs were unable to financially recover.

23.     Through a variety of financial setbacks related to Mr. Ford's health problems, as well as caring for other sick family members, the Fords defaulted on many of their financial obligations, including the Mortgage.

24.     To save their home, the Fords filed for Chapter 13 Bankruptcy protection on November 15, 2009 in the District of Nevada, which was assigned Bankruptcy Case No. 09-31581-mkn (the "Bankruptcy").  A copy of the notice of filing the Bankruptcy is attached as *Plaintiffs' Exhibit A*.

25.     On or about April 19, 2010, the prior servicer of the Loan, Non-Party Bank of America, successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("Bank of America"), agreed to modify the terms of the Loan and offered a loan modification agreement to the Fords (the "Modification").  A copy of the Modification is attached as *Plaintiffs' Exhibit B*.

26.     Pursuant to the terms of the Modification, the Fords' new contractual monthly mortgage payment beginning on July 1, 2010, would be $958.85 per month with

4

$644.87 per month applied to principal and interest and $313.98 per month applied to escrow payments. See *Plaintiffs' Exhibit B.*

27.     Pursuant to the Modification, $22,892.22 of delinquent interest, fees, and costs were capitalized into the Loan, and the new unpaid principal balance of the Loan was $386,921.51, as of July 1, 2010 (the "Modified UPB"), at an initial interest rate of 2.000%.  See *Plaintiffs' Exhibit B.*

28.     Pursuant to the terms of the Modification, the interest rate and, inherently, the monthly principal and interest payment were set to increase to $725.48 and 2.250%, respectively, on July 1, 2012, subject to appropriate changes in the escrow for the Loan. See *Plaintiffs' Exhibit B.*

29.     Pursuant to the terms of the Modification, the interest rate and, inherently, the monthly principal and interest payment were set to increase to $806.09 and 2.500%, respectively, on July 1, 2014, subject to appropriate changes in the escrow for the Loan. See *Plaintiffs' Exhibit B.*

30.     Pursuant to the terms of the Modification, the interest rate and, inherently, the monthly principal and interest payment were set to increase to $967.30 and 3.000%, respectively, on July 1, 2015, subject to appropriate changes in the escrow for the Loan. See *Plaintiffs' Exhibit B.*

31.     The Fords accepted the Modification by signing the Modification, having their signatures notarized, and mailing the Modification to Bank of America.

32.     Throughout the course of the Bankruptcy, the Fords made any and all payments required pursuant to the terms of the Modification, by and through the Trustee, under the Modification.

33.    On or about March 22, 2013, the U.S. Bankruptcy Court issued a *Discharge of Debtor after Completion of Chapter 13 Plan* for the Fords in the Bankruptcy (the "Discharge"). A copy of the Discharge is attached as *Plaintiffs' Exhibit C*.

34.    A dispute arose regarding the servicing of the Loan, specifically as to the application of payments on the Loan pursuant to the terms of the Modification following the Discharge.

35.    On or about June 10, 2013, Bank of America mailed correspondence to the Fords captioned "Change of Servicer Notice" stating that the servicing of the Loan would transfer to Nationstar on July 1, 2013.   A copy of such correspondence is attached as *Plaintiffs' Exhibit D*.

36.    On or about February 28, 2014, the Fords filed an Adversary Complaint in the Bankruptcy against parties including, but not limited to, Bank of America and Nationstar, which was assigned Adversary Proceeding No. 14-01034-MKN (the "Adversary").

37.    On or about March 13, 2015, the Fords entered into a confidential settlement agreement with Nationstar (the "Settlement").  Due to the confidential nature of the Settlement and its terms, a copy of the Settlement is not attached as an exhibit, however Nationstar, as a party to the Settlement will not be prejudiced or otherwise negatively affected by the lack of the attachment of the Settlement.

38.    The Fords performed their duties and fulfilled any and all obligations under the Settlement by resuming their monthly mortgage payments under the terms of the Modification.

39.     Pursuant to the terms of the Modification, the Fords were required to make monthly payments on the Loan from January 1, 2015 through June 31, 2015, in the amount of $806.09, plus escrow, subject to appropriate changes in the escrow for the Loan. See *Plaintiffs' Exhibit B*.

40.     Pursuant to the terms of the Modification, the Fords were required to make monthly payments on the Loan from January 1, 2015 through June 31, 2015, in the amount of $806.09, plus escrow, subject to appropriate changes in the escrow for the Loan. See *Plaintiffs' Exhibit B*.

41.     Pursuant to the terms of the Modification, the Fords were required to make monthly payments on the Loan from July 1, 2015 onward, in the amount of $967.30, plus escrow, subject to appropriate changes in the escrow for the Loan. See *Plaintiffs' Exhibit B*.

42.     The Fords were instructed by Nationstar to withhold making any payments on the Loan in accordance with the Modification until the Settlement was finalized.  A copy of an e-mail thread through April 10, 2015, containing pertinent correspondence from Attorney Ariel Stern of Akerman LLP, counsel for Nationstar in the Adversary, is attached as *Plaintiffs' Exhibit E*.

43.     The Fords' monthly escrow obligation on the Loan pursuant to the terms of the Modification from January 1, 2015 onward, until Nationstar otherwise advised, was $298.84.  See *Plaintiffs' Exhibit E*.

44.     On or about April 4, 2015, the Fords executed a check in the amount of $4,419.72 to Nationstar the (the "April Payment"). A copy of the April Payment is attached as *Plaintiffs' Exhibit F*.

45.     The April Payment was sufficient to cover any and all funds due pursuant to the terms of the Modification for the monthly payments for January 1, 2015 through April 1, 2014.  See *Plaintiffs' Exhibit E and Plaintiffs' Exhibit F*.

46.     On or about April 8, 2015, after confirming the proper address to which the Fords were required to send the April Payment, the Fords sent the April Payment to Nationstar.  The Fords' monthly escrow obligation pursuant to the Loan from January 1, 2015 through April 1, 2015 was $298.84.  See *Plaintiffs' Exhibit E*.

47.     On or about April 27, 2015, the Fords sent a check to Nationstar in the amount of $1,104.94, in satisfaction of their monthly obligation on the loan pursuant to the terms the Modification for the month of May (the "May Payment").  A copy of the May Payment is attached as *Plaintiffs' Exhibit G*.

48.     On or about May 27, 2015, the Fords sent a check to Nationstar in the amount of $1,104.94, in satisfaction of their monthly obligation on the loan pursuant to the terms of the Modification for the month of June (the "June Payment").  A copy of the June Payment is attached as *Plaintiffs' Exhibit H*.

49.     On or about July 5, 2015, the Fords sent a check to Nationstar in the amount of $1,260.34, in satisfaction of their monthly obligation on the loan pursuant to the terms of the Modification for the month of July (the "July Payment").  A copy of the July Payment is attached as *Plaintiffs' Exhibit I*.

50.     On or about August 31, 2015, the Fords, by and through Attorney Krieger, sent correspondence to Nationstar captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" ("RFI #1") via Certified U.S. Mail.

51.    RFI #1 requested that Nationstar provide a life of loan transaction history report, a detailed copy of the last two (2) escrow account analyses, and a copy of an accurate payoff statement for the Loan.

52.    On or about July 28, 2015, the Fords sent a check to Nationstar in the amount of $1,260.34, in satisfaction of their monthly obligation on the loan pursuant to the terms of the Modification for the month of August (the "August Payment").  A copy of the August Payment is attached as *Plaintiffs' Exhibit J.*

53.    On or about September 9, 2015, Nationstar sent correspondence to the Fords by and through Attorney Krieger, in response to RFI #1 ("Response #1").  A copy of Response #1 is attached as *Plaintiffs' Exhibit K.*

54.    Nationstar enclosed a copy of a "DETAIL TRANSACTION HISTORY" (the "History' for the Loan from July 5, 2013 onward (the "History") with Response #1.  See *Plaintiffs' Exhibit K.*

55.    Response #1 stated that "no errors occurred" in the servicing of the Loan and that "[p]ursuant to the account status, a modification has not been complete effective for January 2015."  See *Plaintiffs' Exhibit K.*

56.    Response #1 further stated that "[o]n April 23, 2015, Nationstar received an installment for $27,379.62" which was applied to the Loan on April 30, 2015 "for monthly installments from April 1, 2013 to… October 1, 2014". See *Plaintiffs' Exhibit K.*

57.    Response #1 further stated that the Loan was due for the May 1, 2015 payment.  See *Plaintiffs' Exhibit K.*

58.     On or about September 22, 2015, Nationstar sent correspondence to the Fords containing or otherwise consisting of a mortgage payoff statement (the "Payoff"). A copy of the Payoff is attached as *Plaintiffs' Exhibit L*.

59.     On or about September 25, 2015, the Fords sent a check to Nationstar in the amount of $1,260.34, in satisfaction of their monthly obligation on the loan pursuant to the terms of the Modification for the month of September (the "September Payment"). A copy of the September Payment is attached as *Plaintiffs' Exhibit M*.

60.     On or around September 26, 2015, the Fords, by and through Attorney Krieger, sent correspondence captioned "Notice of Error(s) pursuant to 12 C.F.R. § 1024.35(b); and Request for Information pursuant to 12 C.F.R. § 1024.36" ("NOE #1") to Nationstar via Certified Mail.  A copy of NOE #1 is attached as *Plaintiffs' Exhibit N*.

61.     The Fords, by and through NOE #1, alleged that Nationstar committed four (4) clear, separate, and distinct errors in the servicing of the Loan.  See *Plaintiffs' Exhibit N*.

62.     The Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(2) for "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law" because Nationstar failed to  apply any and all payments made for the months of January 2015 onward under the terms of the Loan as modified pursuant to the Modification.  See *Plaintiffs' Exhibit N*.

63.     The Fords, by and through NOE #1, alleged Nationstar failed to apply any and all payments made for the months of January 2015 onward under the terms of the Loan as modified pursuant to the Modification because they had been charging $1304.00

for a monthly mortgage payment for the months of January 2015 onward rather than the proper amounts pursuant to the Modification of $1,104.94 for the months of January 2015 through June 2015, and $1,260.34 thereafter, respectively.  See *Plaintiffs' Exhibit N.*

64.    Further, the Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(5) by "imposing a fee[s] or charge[s] that the servicer lacks a reasonable basis to impose upon the borrower" in the form of "escrow advances, corporate advances, miscellaneous suspense advances[,] and late charges."  See *Plaintiffs' Exhibit N.*

65.    Moreover, the Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in failing or otherwise refusing to honor the finalized terms of the Modification.  See *Plaintiffs' Exhibit N.*

66.    Lastly, the Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by sending "coupon books" to the Fords stating that the Fords' monthly payment obligations on the Loan were $1,304.00 when such is not the case. See *Plaintiffs' Exhibit N.*

67.    Nationstar has not sent any correspondence to either the Fords or Attorney Krieger acknowledging receipt of or otherwise responding to NOE #1.

68.    On or around September 30, 2015, the Fords, by and through Attorney Krieger, sent correspondence captioned "Notice of Error(s) pursuant to 12 C.F.R. § 1024.35(b); and Request for Information pursuant to 12 C.F.R. § 1024.36" ("NOE #2") to Nationstar via Certified Mail.  A copy of NOE #2 is attached as *Plaintiffs' Exhibit O.*

69.    The Fords, by and through NOE #2, reasserted the errors otherwise contained in NOE #1.  See *Plaintiffs' Exhibit O*.

70.    The Fords, by and through NOE #2, alleged that Nationstar committed one (1) additional error in the servicing of the Loan that was clear, separate, and distinct errors from those asserted by and through NOE #1.  See *Plaintiffs' Exhibit O*.

71.    The Fords, by and through NOE #2, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in charging an improper amount for the escrow account for the Loan.  See *Plaintiffs' Exhibit O*.

72.    Specifically, as of March 6, 2014, the monthly escrow payment for the Loan was $298.84, consisting of $85.55 for homeowner's insurance and $213.29 for property taxes, respectively. See *Plaintiffs' Exhibit O*.

73.    From March 6, 2014, through September 30, 2015, neither the Fords nor Attorney Krieger had received any notice from Nationstar indicating that their monthly obligations for the escrow account for the Loan had changed. See *Plaintiffs' Exhibit O*.

74.    As such, the Fords, by and through NOE #2, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in charging $497.91, rather than $298.84.  See *Plaintiffs' Exhibit O*.

75.    Nationstar has not sent any correspondence to either the Fords or Attorney Krieger acknowledging receipt of or otherwise responding to NOE #2.

76.    Nationstar's refusal to honor the Modification has resulted in a significant number of the Fords' mortgage payments to be misapplied, thereby causing the Fords to incur a number of improper, wrongful, or otherwise unwarranted fees on the Loan

including, but not limited to numerous late fees, corporate advances, and miscellaneous charges.

77. The Fords, throughout this entire process, have merely wanted to pay their monthly mortgage payment pursuant to the Modification for which they bargained and continue to rehabilitate their credit following the Bankruptcy.

78. The Fords have further taken reasonable steps, by and through issuing NOE #1 and NOE #2, to correct the errors that the Fords allege Nationstar committed in the servicing of the Loan and mitigate their damages, but Nationstar has wholly failed to respond to such.

79. All attempts and requests the Fords have made to Nationstar to have their mortgage servicing corrected have fallen on deaf ears.

80. Nationstar's continued and consistent refusal to honor the Modification and to properly respond to the multiple notices of error submitted by the Fords have caused the Fords significant, continued, and wholly unwarranted harm to their credit.

81. Moreover, Nationstar's actions in refusing to honor the Modification, wrongfully claiming that the Fords are in default on the Loan, failing to respond to NOE #1 and NOE #2 have caused the Fords to incur costs, fees, and lost time in attempting to correct the errors and mistakes on the Loan account.

82. In fact, even though the Fords had fully performed under the Loan Modification and Settlement terms by tendering all payments due to Nationstar, Nationstar mailed the Fords a letter dated October 21, 2015, wherein Nationstar incorrectly stated that the Fords failed to make payments in the amount of $12,434.50

and demanded that the Fords "**pay this amount to bring [the Fords'] loan current.**" A Copy of this letter is not currently available for an exhibit.

83.     Further, the Nationstar Demand Letter improperly threatened that "**failure to bring [the Fords'] loan current may result in fees, possibly even foreclosure and the loss of the [Fords'] home.**"

84.     Further, Nationstar's wrongful and willful actions have caused the Fords to suffer emotional distress driven by the fear that they might lose and be forced from their family home, even though Nationstar is wrongfully alleging the Fords to be in default, which has resulted in anxiety, depression, embarrassment, fear, frustration, anger, loss of sleep, loss of appetite, chest pains, headaches, feelings of helplessness and intimidation, illness, medical expenses, rage and other emotional distress.

85.     As of the time of the filing of this Complaint, Nationstar has had more than 5,600 consumer complaints lodged against them nationally, specifically concerning the issue identified as "[l]oan modification, collection, foreclosure" and more than 4,300 consumer complaints lodged against them nationally, specifically concerning the issue identified as "[l]oan servicing, payments, escrow account". Each such complaint is filed and cataloged in the Consumer Financial Protection Bureau's publicly accessible online database (http://www.consumerfinance.gov/complaintdatabase/).

## COUNT ONE: VIOLATION OF 12 C.F.R. §1024.35(d)

## Failure to Send Written Notice Acknowledging Receipt of a Notice of Error in Violation of the Requirements of 12 C.F.R. § 1024.35(d)

86.     The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

87.     12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

88.     Further, Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

89.     12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

90.     On or about September 26, 2015, the Fords, by and through Attorney Krieger, sent NOE #1 to Nationstar via Certified Mail.  See *Plaintiffs' Exhibit N*.

91.     The Fords sent NOE #1 to the address indicated on Nationstar's website as the address to which borrowers should submit any requests for information, notices of error, or qualified written requests.

92.     The Fords, by and through NOE #1, alleged that Nationstar committed four (4) clear, separate, and distinct errors in the servicing of the Loan.  See *Plaintiffs' Exhibit N*.

93.     The Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(2) for "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the

terms of the mortgage loan and applicable law" because Nationstar failed to  apply any and all payments made for the months of January 2015 onward under the terms of the Loan as modified pursuant to the Modification.  See *Plaintiffs' Exhibit N.*

94.     The Fords, by and through NOE #1, alleged Nationstar failed to apply any and all payments made for the months of January 2015 onward under the terms of the Loan as modified pursuant to the Modification because they had been charging $1304.00 for a monthly mortgage payment for the months of January 2015 onward rather than the proper amounts pursuant to the Modification of $1,104.94 for the months of January 2015 through June 2015, and $1,260.34 thereafter, respectively.  See *Plaintiffs' Exhibit N.*

95.     Further, the Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(5) by "imposing a fee[s] or charge[s] that the servicer lacks a reasonable basis to impose upon the borrower" in the form of "escrow advances, corporate advances, miscellaneous suspense advances[,] and late charges."  See *Plaintiffs' Exhibit N.*

96.     Moreover, the Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in failing or otherwise refusing to honor the finalized terms of the Modification.   See *Plaintiffs' Exhibit N.*

97.     Lastly, the Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by sending "coupon books" to the Fords stating that the Fords' monthly payment obligations on the Loan were $1,304.00 when such is not the case. See *Plaintiffs' Exhibit N.*

98.    Nationstar received NOE #1 on or around October 7, 2015.

99.    Pursuant to 12 C.F.R. § 1024.35(d), Nationstar was required to send written notice to the Fords acknowledging receipt of NOE #1 within five (5) days of Nationstar's receipt of NOE #1, excluding legal public holidays, Saturdays, and Sundays.

100.    Neither the Fords nor Attorney Krieger have received any correspondence acknowledging receipt of or otherwise responding to NOE #1

101.    Nationstar has not sent any correspondence to either the Fords or Attorney Krieger acknowledging receipt of or otherwise responding to NOE #1.

102.    Nationstar failed to send written notice to the Fords acknowledging receipt of NOE #1 within five (5) days of Nationstar's receipt of NOE #1, excluding legal public holidays, Saturdays, and Sundays.

103.    Nationstar's actions, in failing to send written notice to the Fords acknowledging receipt of NOE #1 within five (5) days of Nationstar's receipt of NOE #1, excluding legal public holidays, Saturdays, and Sundays, constitute a clear, separate, and distinct violation of 12 C.F.R. § 1024.35(d).

104.    Nationstar's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Fords' rights.

105.    As a result of Nationstar's actions, Nationstar is liable to the Fords for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: VIOLATION OF 12 C.F.R. §1024.35(d)

### Failure to Send Written Notice Acknowledging Receipt of a Notice of Error in Violation of the Requirements of 12 C.F.R. § 1024.35(d)

106.    The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

107.    12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

108.    Further, Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

109.    12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

110.    On or around September 30, 2015, the Fords, by and through Attorney Krieger, sent NOE #2 to Nationstar via Certified Mail.  See *Plaintiffs' Exhibit O.*

111.    The Fords sent NOE #2 to the address indicated on Nationstar's website as the address to which borrowers should submit any requests for information, notices of error, or qualified written requests.

112.    The Fords, by and through NOE #2, reasserted the errors otherwise contained in NOE #1.  See *Plaintiffs' Exhibit O.*

113.    The Fords, by and through NOE #2, alleged that Nationstar committed one (1) additional error in the servicing of the Loan that was clear, separate, and distinct errors from those asserted by and through NOE #1.  See *Plaintiffs' Exhibit O.*

114.    The Fords, by and through NOE #2, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in charging an improper amount for the escrow account for the Loan.  See *Plaintiffs' Exhibit O.*

115.    Specifically, as of March 6, 2014, the monthly escrow payment for the Loan was $298.84, consisting of $85.55 for homeowner's insurance and $213.29 for property taxes, respectively. See *Plaintiffs' Exhibit O.*

116.    From March 6, 2014, through September 30, 2015, neither the Fords nor Attorney Krieger had received any notice from Nationstar indicating that their monthly obligations for the escrow account for the Loan had changed. See *Plaintiffs' Exhibit O.*

117.    As such, the Fords, by and through NOE #2, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in charging $497.91, rather than $298.84.  See *Plaintiffs' Exhibit O.*

118.    Nationstar received NOE #2 on or around October 7, 2015.

119.    Pursuant to 12 C.F.R. § 1024.35(d), Nationstar was required to send written notice to the Fords acknowledging receipt of NOE #2 within five (5) days of Nationstar's receipt of NOE #2, excluding legal public holidays, Saturdays, and Sundays.

120.    Neither the Fords nor Attorney Krieger have received any correspondence acknowledging receipt of or otherwise responding to NOE #2.

121.    Nationstar has not sent any correspondence to either the Fords or Attorney Krieger acknowledging receipt of or otherwise responding to NOE #2.

122.    Nationstar failed to send written notice to the Fords acknowledging receipt of NOE #1 within five (5) days of Nationstar's receipt of NOE #2, excluding legal public holidays, Saturdays, and Sundays.

123.    Nationstar's actions, in failing to send written notice to the Fords acknowledging receipt of NOE #2 within five (5) days of Nationstar's receipt of NOE #2, excluding legal public holidays, Saturdays, and Sundays, constitute a clear, separate, and distinct violation of 12 C.F.R. § 1024.35(d).

124.    Nationstar's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Fords' rights.

125.    As a result of Nationstar's actions, Nationstar is liable to the Fords for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: VIOLATION OF 12 C.F.R. §1024.35(e)

### Failure to Send a Response to a Notice of Error in Compliance with the Requirements of 12 C.F.R. § 1024.35(e)(1)

126.    The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

127.    12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

128.    Further, Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

129.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the

correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

130.    12 C.F.R. § 1024.35(e)(3)(i)(C) provides that, in regards to a notice of error submitted pursuant to 12 C.F.R. §1024.35(b)(11), a servicer must comply with 12 C.F.R. §1024.35(e)(1) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error.

131.    On or about September 26, 2015, the Fords, by and through Attorney Krieger, sent NOE #1 to Nationstar via Certified Mail.  See *Plaintiffs' Exhibit N*.

132.    The Fords, by and through NOE #1, alleged that Nationstar committed four (4) clear, separate, and distinct errors in the servicing of the Loan.  See *Plaintiffs' Exhibit N*.

133.    The Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(2) for "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law" because Nationstar failed to  apply any and all payments made for the months of January 2015 onward under the terms of the Loan as modified pursuant to the Modification.  See *Plaintiffs' Exhibit N*.

134.    The Fords, by and through NOE #1, alleged Nationstar failed to apply any and all payments made for the months of January 2015 onward under the terms of the Loan as modified pursuant to the Modification because they had been charging $1304.00 for a monthly mortgage payment for the months of January 2015 onward rather than the proper amounts pursuant to the Modification of $1,104.94 for the months of January 2015 through June 2015, and $1,260.34 thereafter, respectively.  See *Plaintiffs' Exhibit N*.

135.    Further, the Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(5) by "imposing a fee[s] or charge[s] that the servicer lacks a reasonable basis to impose upon the borrower" in the form of "escrow advances, corporate advances, miscellaneous suspense advances[,] and late charges." See *Plaintiffs' Exhibit N*.

136.    Moreover, the Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in failing or otherwise refusing to honor the finalized terms of the Modification.  See *Plaintiffs' Exhibit N*.

137.    Lastly, the Fords, by and through NOE #1, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by sending "coupon books" to the Fords stating that the Fords' monthly payment obligations on the Loan were $1,304.00 when such is not the case. See *Plaintiffs' Exhibit N*.

138.    Nationstar received NOE #1 on or around October 7, 2015.

139.    Pursuant to 12 C.F.R. § 1024.35(e), Nationstar was required to send a written response to NOE #1 to the Fords in compliance with the requirements of 12

C.F.R. 1024.35(e)(1) within thirty (30) days of Nationstar's receipt of NOE #1, excluding legal public holidays, Saturdays, and Sundays.

140.    Neither the Fords nor Attorney Krieger have received any correspondence from Nationstar in response to NOE #1

141.    Nationstar has not sent any correspondence to either the Fords or Attorney Krieger in response to NOE #1.

142.    Nationstar failed to send a written response to NOE #1 to the Fords in compliance with the requirements of 12 C.F.R. 1024.35(e)(1) within thirty (30) days of Nationstar's receipt of NOE #1, excluding legal public holidays, Saturdays, and Sundays

143.    Nationstar's actions, in failing to send a written response to NOE #1 to the Fords in compliance with the requirements of 12 C.F.R. 1024.35(e)(1) within thirty (30) days of Nationstar's receipt of NOE #1, excluding legal public holidays, Saturdays, and Sundays, constitute a clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e).

144.    Nationstar's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Fords' rights.

145.    As a result of Nationstar's actions, Nationstar is liable to the Fords for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FOUR: VIOLATION OF 12 C.F.R. §1024.35(e)

### Failure to Send a Response to a Notice of Error in Compliance with the Requirements of 12 C.F.R. § 1024.35(e)(1)

146.    The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

147.    12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an

error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

148.    Further, Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

149.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

150.    12 C.F.R. § 1024.35(e)(3)(i)(C) provides that, in regards to a notice of error submitted pursuant to 12 C.F.R. §1024.35(b)(11), a servicer must comply with 12 C.F.R. §1024.35(e)(1) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error.

151.    On or around September 30, 2015, the Fords, by and through Attorney Krieger, sent NOE #2 to Nationstar via Certified Mail.  See *Plaintiffs' Exhibit O.*

152.    The Fords, by and through NOE #2, reasserted the errors otherwise contained in NOE #1.  See *Plaintiffs' Exhibit O.*

153.    The Fords, by and through NOE #2, alleged that Nationstar committed one (1) additional error in the servicing of the Loan that was clear, separate, and distinct errors from those asserted by and through NOE #1.  See *Plaintiffs' Exhibit O.*

154.    The Fords, by and through NOE #2, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in charging an improper amount for the escrow account for the Loan.  See *Plaintiffs' Exhibit O.*

155.    Specifically, as of March 6, 2014, the monthly escrow payment for the Loan was $298.84, consisting of $85.55 for homeowner's insurance and $213.29 for property taxes, respectively. See *Plaintiffs' Exhibit O.*

156.    From March 6, 2014, through September 30, 2015, neither the Fords nor Attorney Krieger had received any notice from Nationstar indicating that their monthly obligations for the escrow account for the Loan had changed. See *Plaintiffs' Exhibit O.*

157.    As such, the Fords, by and through NOE #2, alleged that Nationstar committed an error in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in charging $497.91, rather than $298.84.  See *Plaintiffs' Exhibit O.*

158.    Nationstar received NOE #2 on or around October 7, 2015.

159.    Pursuant to 12 C.F.R. § 1024.35(e), Nationstar was required to send a written response to NOE #2 to the Fords in compliance with the requirements of 12 C.F.R. 1024.35(e)(1) within thirty (30) days of Nationstar's receipt of NOE #1, excluding legal public holidays, Saturdays, and Sundays.

160.    Neither the Fords nor Attorney Krieger have received any correspondence from Nationstar in response to NOE #2.

161.    Nationstar has not sent any correspondence to either the Fords or Attorney Krieger in response to NOE #2.

162.    Nationstar failed to send a written response to NOE #2 to the Fords in compliance with the requirements of 12 C.F.R. 1024.35(e)(1) within thirty (30) days of Nationstar's receipt of NOE #2, excluding legal public holidays, Saturdays, and Sundays

163.    Nationstar's actions, in failing to send a written response to NOE #2 to the Fords in compliance with the requirements of 12 C.F.R. 1024.35(e)(1) within thirty (30) days of Nationstar's receipt of NOE #2, excluding legal public holidays, Saturdays, and Sundays, constitute a clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e).

164.    Nationstar's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Fords' rights.

165.    As a result of Nationstar's actions, Nationstar is liable to the Fords for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FIVE
## VIOLATIONS OF THE FDCPA - 15 U.S.C. § 1692, et seq.
## (against Defendant Nationstar as a "Default Servicer")

166.    The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

167.    Nationstar's conduct violated 15 U.S.C. § 1692d in that Nationstar engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiffs in connection with the collection of a debt.   Specifically, Nationstar made

numerous threats of foreclosure and attempted to collect impermissible fees, interest and other charges causing the Plaintiffs to feel helpless, harassed, oppressed, and/or abused.

168.    Nationstar's conduct violated 15 U.S.C. § 1692e in that Nationstar engaged in false, deceptive or misleading behavior in connection with the collection of a debt. Specifically, among other things, Nationstar misstated the correct balance due on Plaintiffs' Loan, wrongfully claimed that the Fords were in default on the Loan, misrepresented that Nationstar had the right to foreclose on the Property, and by failing to honor the terms of the loan modification.  Specifically, Nationstar failed to apply any and all payments made for the months of January 2015 onward under the terms of the Loan as modified pursuant to the Modification because they had been charging $1304.00 for a monthly mortgage payment for the months of January 2015 onward rather than the proper amounts pursuant to the Modification of $1,104.94 for the months of January 2015 through June 2015, and $1,260.34

169.    Nationstar's conduct violated 15 U.S.C. § 1692e(2) in that Nationstar misrepresented the amount of the Debt owed by Plaintiffs and attempted to have Plaintiffs pay more than the Debt actually owed on the Mortgage by failing to honor the terms of the loan modification.

170.    Nationstar's conduct violated 15 U.S.C. § 1692e(5) in that Nationstar threatened to take action against the Plaintiffs which it could not legally take or did not intend to take in collection of a debt by wrongfully claiming that the Fords were in default on the Loan and threatening foreclosure.

171.    Nationstar's conduct violated 15 U.S.C. § 1692e(10) in that Nationstar employed various false representations and deceptive means to collect a debt.

172.    Nationstar's conduct violated 15 U.S.C. § 1692f in that Nationstar's collection actions were unfair and/or unconscionable.

173.    Nationstar's conduct violated 15 U.S.C. § 1692f(1) in that Nationstar:

- attempted to collect an amount not authorized by the Loan Modificaiton Agreement;

- charged an improper amount for the escrow account for the Loan;

- sent "coupon books" to the Fords stating that the Fords' monthly payment obligations on the Loan were $1,304.00 when such was not the case;

- failed or otherwise refused to honor the finalized terms of the Modification

174.    The foregoing acts and omissions of Defendant Nationstar constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions, as well others as discovery may provide.

175.    The Fords are entitled to damages as a result of Nationstar's violations.

176.    The Fords have been required to retain the undersigned as counsel to protect their legal rights to prosecute this cause of action, and are therefore entitled to an award or reasonable attorneys' fees plus costs incurred.

<u>COUNT SIX</u>

(Breach of Contract)

177.    The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

178.    The Fords accepted and performed under the terms of the Modification and Settlement.

179.    Nationstar breached the Modification and Settlement by failing to honor the Modification terms and apply payments in accord with the Modification and Settlement.

180.    Nationstar has denied or failed to honor the Modification and Settlement and instead, has generated profit for itself by charging late and default fees and interest in excess of the original modified monthly mortgage payment amount, in breach of the Modification and Settlement terms and thereby has breached the contract between Plaintiff and Nationstar.

181.    The Fords performed all their obligations under the Modification and Settlement, however Nationstar has breached the Modification and Settlement.

182.    As a result of these breaches, the Fords have sustained the following damages, to be proven at trial, including, but not limited to:

   a.  Increased amounts of the principal balance of their mortgage loan;

   b.  Increased amounts of mortgage payments over the course of the mortgage loan;

   c.  Late fees and the improper application of their principal payments improperly used to service those fees;

183.    As a direct and proximate result of Nationstar's breach of the Modification and Settlement, the Fords did not receive the benefit of the bargain, suffered damages and are threatened with additional harm, in an amount to be determined at trial.

## COUNT SEVEN

### (Breach of Implied Covenant of Good Faith And Fair Dealing)

184.    The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

185.    Every contract contains an implied covenant requiring that neither party act to disrupt the other's ability to enjoy the benefit of the bargain. Furthermore, where a contract provides one of the Parties with discretion or sole authority to carry out obligations under the agreement for the benefit of the other Party, the Party enjoying such discretion and authority may not abuse it or exercise it in such a manner so as to deprive the other Party of the benefits of the contract.

186.    Nationstar breached the implied covenant of good faith and fair dealing contained in the Modification and Settlement.

187.    Nationstar further breached the implied covenant of good faith and fair dealing by, *inter alia:*

    a.  Failing to make a good faith effort to fulfill contractual obligations, written and implied promises, and loan servicing functions;

    b.  Failing to allocate sufficient resources and to train competent and knowledgeable staff in order to ensure accurate processing of payments made pursuant to a valid and existing permanent loan modification agreement;

    c.  Demanding late fees, interest and other delinquency related fees from the Fords in excess of the original monthly mortgage payment amount that Plaintiffs were not responsible to pay; and,

    d.  Threatening the Fords with foreclosure despite the existence of the Modification even through Nationstar received timely payments under the Modification and Settlement terms.

188.   The Mortgage Defendants have intentionally and continuously acted in a manner so as to frustrate Plaintiffs' ability to make continued and timely payments pursuant to the terms of the Modification and Settlement by which Nationstar was obligated to abide.

189.   By failing to honor the terms of the Modification and Settlement, Nationstar has abused its authority under the Modification and Settlement, frustrated Plaintiffs' ability to obtain the benefits of the Modification and Settlement, and thus breached the implied covenant of good faith and fair dealing.

190.   As a direct result of Nationstar's breaches of the implied covenant of good faith and fair dealing, Plaintiffs suffered damages in an amount to be determined at trial.

## COUNT EIGHT
### (Violations of NRS 41.1395)

191.   The Fords restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

192.   The Fords are each "older or vulnerable" persons as defined by NRS 41.1395.

193.   Nationstar caused the Fords to suffer injuries as a result of Nationstar's illegal conduct; specifically emotional and economic distress.

194.   Nationstar's actions were willful and unjustified and resulted in causing injuries and mental anguish to the Fords, and each of them.

195.   As a direct and proximate result of Nationstar's wrongful conduct, the Fords suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter its order granting judgment for the following:

A.)     For actual damages, costs, and reasonable attorneys' fees;

B.)     For statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each and every count contained in Count One through Count Four;

C.)     For statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) as to Nationstar;

D.)     For two (2) times any actual damages pursuant to NRS 41.1395;

E.)     For punitive damages against all Defendants; and

F.)     Such other relief which this Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

Respectfully submitted,

/s/ David Krieger
David Krieger #9086
Haines & Krieger
8985 S. Eastern Avenue, #350
Henderson, NV 89123
708/880-5554 x. 223
dkrieger@hainesandkrieger.com

/s/ Daniel M. Solar
Daniel M. Solar #0085632
THE DANN LAW FIRM CO., L.P.A.
P.O. Box 6031040
Cleveland, OH  44103
(216) 373-0539
Fax (216) 373-0536
notices@dannlaw.com
Pro Hac Vice w/Application Pending