David Krieger, Esq.
Nevada Bar No. 9086
**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Telephone: (708)880-5554
dkrieger@hainesandkrieger.com

Daniel M. Solar, Esq. [*Pro Hac Vice*]
Ohio Bar No. 0085632
Marc E. Dann, Esq. [*Pro Hac Vice*]
Ohio Bar No. 0039425
Donna J. Taylor-Kolis [*Pro Hac Vice*]
Ohio Bar No. 0002960
**DANNLAW**
P.O. Box 6031040
Cleveland, Ohio 44103
Telephone: (216)373-0539
dsolar@dannlaw.com
mdann@dannlaw.com
dkolis@dannlaw.com
*Counsel for Plaintiffs Georgina Ford and the Estate of Murray D. Ford*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **GEORGINA FORD and THE ESTATE OF MURRAY D. FORD** | Case No. 2:16-cv-00344-RFB-(PAL) |
| Plaintiffs, | **TRIAL BRIEF OF PLAINTIFFS GEORGINA FORD AND THE ESTATE OF MURRAY D. FORD** |
| v. | |
| NATIONSTAR MORTGAGE, LLC, | |
| Defendant. | |

### I.  STATEMENT OF THE CASE

This is a civil case brought by Plaintiffs Georgina Ford and the Estate of Murray D. Ford ("Plaintiffs" or the "Fords") against Defendant Nationstar Mortgage, LLC ("Defendant" or "Nationstar"). The Fords allege that Nationstar violated federal consumer protection laws and

breached their duty of good faith and fair dealing by engaging in illegal and wrongful debt collection, attempted foreclosure activities during the time the Fords were current on their mortgage obligations, and failed to correct errors arising from its mistake despite multiple written complaints from the Fords. The Fords allege that this conduct caused them economic harm and substantial emotional distress.

On September 27, 2017, this Court denied Nationstar's Motion for Summary Judgment as to:

- Count Two and Count Three each alleging Nationstar violated of Regulation X of the Real Estate Settlement Procedures Act (RESPA), 12 C.F.R. § 1024.35(e), in failing to properly investigate and respond to notices of error submitted by the Fords;
- Count Five alleging Nationstar violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*.; and,
- Count Seven alleging Nationstar tortiously breached the implied covenant of good faith and fair dealing.

[ECF No. 65]. Trial is currently set for May 29, 2018 at 9:00 a.m. before this Court.

**II. STATEMENT OF FACTS**

In August 2004, the Fords took out a note and deed of trust (collectively, the "Loan") on their home (the "Home"). The Fords entered into a Loan Modification Agreement (the "Modification") with Bank of America in April, 2010. On July 1, 2013, Nationstar began servicing the Fords' Loan. In February, 2014, the Fords filed an Adversary Complaint in their bankruptcy against Bank of America and Nationstar, complaining of errors made in the servicing of their account. On or about March 13, 2015, the Fords, Bank of America, and Nationstar settled the Adversary Complaint via a confidential settlement (the "Settlement Agreement").

Bank of America and Nationstar made their respective payments pursuant to the Settlement Agreement. As also required, the funds necessary to bring the Loan current (the "Holdback Payment") was applied to the Loan. However, in applying the Holdback Payment, Nationstar used an incorrect and outdated escrow calculation. This erroneous calculation incorrectly increased the amount of the escrow, and thus a larger share of the Holdback Payment was wrongly applied to the escrow and the Loan was not brought current as intended through the Settlement Agreement.

Regulation X to RESPA, created a cure mechanism to notify a mortgage servicer of its mistakes and to give it an opportunity to correct its mistakes. The Fords, concerned that Nationstar claiming that they were delinquent in their mortgage obligations despite the Settlement Agreement, in compliance with RESPA regulations, made numerous attempts, both verbally and in writing, to ask Nationstar to properly apply their payments and to deem the Loan current as they had satisfied their obligations. Notably, the Fords sent two (2) notices of error on September 26, 2015 ("NOE #1"), and September 30, 2015 ("NOE #2"), respectively, requesting that Nationstar correct its errors in applying payments to the Loan with an incorrect escrow amount which had placed them into delinquency. It is undisputed that Nationstar failed to correct the errors alleged by and through NOE #1 and NOE #2 (collectively the "NOEs"), respectively, and instead wrongly claimed that Nationstar did not commit any errors. The response to NOE #2 went on to allege that the Fords owed a payment of more than $1,500.00 more than what was technically owed on the loan. Despite the Fords' full performance of their obligations under the Loan, Nationstar continuously claimed that the Fords were delinquent and in default and that unless the Fords remitted funds (which the Fords did not legally owe), the Fords were on a path to losing their Home to foreclosure. Nationstar then sent the foreclosure notice on October 6, 2015.

Nationstar later admitted that the errors the Fords complained of through the NOEs did, in

fact, occur nine (9) months after the filing of this lawsuit.

**III. ISSUES TO BE RESOLVED AT TRIAL**

    **A. Whether Nationstar violated RESPA by failing to perform a reasonable investigation to the errors alleged via the NOEs**

12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." Further, Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

Nationstar did not correct the errors the Fords alleged in each of the NOEs, nor did they conduct a reasonable investigation. Rather, Nationstar claimed that no errors on the account occurred in response to the NOEs. The Fords will show that Nationstar failed to perform a reasonable investigation into the errors alleged by and through each of the NOEs thereby violating 12 C.F.R. § 1024.35(e)(1). Nationstar is expected to repeatedly and oxymoronically claim that

4

these violations were just multiple, unfortunate "one-off" situations. Nationstar, however, lacked effective policies and procedures to equip and empower the employees responding to the NOEs to perform such reasonable investigations and incentivized hasty investigations based on false assumptions through such policies as maintaining an expected quota of responses for each such employee to complete in a given day. As such, the Fords will not only show that Nationstar committed such violations of 12 C.F.R. § 1024.35(e)(1), but that such violations are part of a more generalized pattern and practice of such malfeasant behavior by Nationstar. Further, evidence will show that the two Nationstar employees who conducted the research, did not have access to the company's policies and procedures. The court should note that Defendant's proposed Statement of the Case falsely implies that a "Bona Fide Error" defense applies to RESPA claims. No such statutory provision or common law doctrine exists.

**B. Whether Nationstar engaged in debt collection activity in violation of the FDCPA**

The Fords will show that Nationstar committed multiple and varied violations of the FDCPA in their handling of the Fords' Loan including that Nationstar violated:

- 15 U.S.C. § 1692d by engaging in behavior the natural consequence of which was to harass, oppress, or abuse the Fords in connection with the collection of a debt through numerous threats of foreclosure and the attempted collection impermissible fees, interest and other charges causing the Fords to feel helpless, harassed, oppressed, and/or abused.

- 15 U.S.C. § 1692e by engaging in false, deceptive or misleading behavior in connection with the collection of a debt by, among other things, misstating the correct balance due on the Loan, wrongfully claiming that the Fords were in default on the Loan, misrepresenting that Nationstar had the right to foreclose on the Fords'

Home, and by failing to honor the terms of the Settlement Agreement in failing to properly apply any and all payments made for the months of January 2015 onward.

- 15 U.S.C. § 1692e(2) by misrepresenting the amount of the debt owed by the Fords and attempting to cause the Fords to pay more than the debt actually owed on the Loan.

- 15 U.S.C. § 1692e(5) by threatening to take action against the Fords which Nationstar could not legally take or did not intend to take in collection of a debt by wrongfully claiming that the Fords were in default on the Loan and threatening foreclosure.

- 15 U.S.C. § 1692e(10) by employing various false representations and deceptive means to collect a debt.

- 15 U.S.C. § 1692f by engaging in unfair and/or unconscionable collection actions.

Each and every statement was made intentionally not inadvertently. *See Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982). It is expected that Nationstar will claim that the violations of the FDCPA were "bona fide errors". A defense that is similar to the defense available under the Truth in Lending Act, which finds that clerical errors are the only violations to which the Bona Fide Error defense should apply. *See Baker*, 677 F.2d at 775. The Ninth Circuit has held on numerous occasions that the FDCPA is a strict liability statute and a plaintiff need not prove an error was intentional. *See Reichert v. National Credit Systems, Inc.,* 531 F.3d 1002, 1004 (9th Cir. 2008). However, in extreme circumstances, debt collectors are relieved of liability under 15 U.S.C. § 1692k(c):

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid

6

any such error.

*Id.* Thus, the debt collector must show that its violation: (1) Was unintentional; (2) was bona fide (that is, not contrived); and (3) occurred in spite of the fact the defendant maintained procedures reasonably adapted to avoid the "specific error at issue." *See McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 948 (9th Cir. 2011), citing *Reichert* at 1006. Further, the bona fide error defense requires debt collectors to meet all of the above elements in order to escape liability, not just one or two, and, when a debt collector does not make a showing of each and every such element, a finding that a bona fide error occurred is reversible error. *Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162, 1177 (9th Cir. 2006). Finally, "[b]ecause the FDCPA…is a remedial statute, it should be construed liberally in favor of the consumer." *Id.* at 1176.

It is not enough to merely assert a reasonable procedure was in place when the purported error occurred. A defendant must explain the procedures, along with the manner in which they were adapted to avoid the error. *Reichert* at 1007. ("If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of "procedures reasonably adapted to avoid any such error" must require more than a mere assertion to that effect. Only after the procedures are explained is the mistake entitled to be treated as one made in good faith."). *Id*.

Again, despite Nationstar's constant references to the Fords' multiple problems bafflingly referred to as a series of "complex" and "one-off" situations, the Fords will show this to clearly be contrary.

**C. Whether Nationstar tortiously breached the implied covenants of good faith and fair dealing**

Nevada law holds that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Haskell v. PNC Bank, N.A.,* No. 3:11-cv-887-RCJ-VPC, 2012 U.S. Dist. LEXIS 108847, at *10-12 (D. Nev. Aug. 3, 2012); *see also*, *A.C. Shaw*

*Constr., Inc. v. Washoe Cnty.*, 105 Nev. 913, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). "[T]he implied covenant 'exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made.'" *Guthrie v. Argent Mortg. Co., LLC*, 2011 U.S. Dist. LEXIS 142468, 2011 WL 6140660, at *3 (D. Nev. 2011) (citing *Guz v. Bechtel Nat., Inc.*, 24 Cal.4th 317, 349, 100 Cal. Rptr. 2d 352, 8 P.3d 1089 (2000)).). "[W]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Productions*, 107 Nev. 226, 234, 808 P.2d 919, 923 (1991). Reasonable expectations are "determined by the various factors and special circumstances that shape these expectations." *Id.* at 234, 808 P.2d at 924, *see also Perry v. Jordan*, 111 Nev. 943, 948, 900 P.2d 335, 338 (1995).

To succeed on a claim for breach of such, a plaintiff must show: (1) The plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner unfaithful to the purpose of the contract; and, (4) the plaintiff's justified expectations were denied. *Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335, 338 (Nev. 1995).

Nationstar did not act in good faith to investigate and correct the errors. It even threatened the Fords with foreclosure. The Fords repeatedly communicated to Nationstar that it had made a mistake and that Nationstar itself was in breach of the contract, yet Nationstar discarded the Fords' communications and continued engaging in wrongful conduct—resulting in a total frustration of the Fords' rights under the agreement and the threat of losing their home. Nationstar breached its duty by performing in a manner that was unfaithful to the purpose of the Settlement Agreement; and the Fords' justified expectations were denied.

In *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1254 (D. Nev. 2016), *appeal dismissed*, No. 16-16542, 2017 WL 3923364 (9th Cir. Mar. 20, 2017), this Court states that "a breach of the implied covenants can give rise to tort liability when there is a special relationship between the contracting parties." This Court held that there was a special relationship between borrower and mortgage servicer because CitiMortgage "held all of the bargaining power" and Shaw "had limited bargaining power as a financially strapped borrower." *Id.* "In such relationships, courts have routinely recognized that there is a need to protect the weak from the insults of the stronger that is not adequately met by ordinary contract damages." *Id.* at 1255 (internal quotations omitted). Like *Shaw*, the Fords and Nationstar have the exact same special relationship due to the unequal bargaining positions of the parties. That special relationship is sufficient to support tort liability. *See id.* at 1254; *see also State, Univ. & Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 989, 103 P.3d 8, 19 (2004) ("Tort liability for breach of the implied covenant of good faith and fair dealing is appropriate where the party in the superior or entrusted position has engaged in grievous and perfidious misconduct.") (internal quotations omitted).

Nationstar tortiously breached the implied covenant of good faith and fair dealing contained in the Settlement Agreement by, *inter alia*: (1) Failing to make a good faith effort to fulfill contractual obligations, written and implied promises, and loan servicing functions; (2) failing to allocate sufficient resources and to train competent and knowledgeable staff in order to ensure accurate processing of payments made pursuant to a valid and existing permanent loan modification agreement; (3) demanding late fees, interest and other delinquency fees from the Fords in excess of the contractual monthly mortgage payment amount that the Fords were not responsible to pay; and, (4) threatening the Fords with foreclosure despite the Fords' performance under the Agreement.

**IV. RELIEF REQUESTED**

    **A. Actual Damages**

The Fords seek compensation for any actual damages they sustained and are reasonably certain to sustain in the future as a direct result of Nationstar's failure to reasonably investigate and correct errors pursuant to RESPA. 12 U.S.C. § 2605(f)(1)(A). Actual damages under RESPA may include loss of time and inconvenience, out of pocket costs and other monetary losses, and emotional distress damages, mental anguish, and suffering.

Additionally, the Fords seek compensation for any actual damages they sustained and are reasonably certain to sustain in the future as a direct result of Nationstar's use of unfair or deceptive means to collect a debt pursuant to the FDCPA. 15 U.S.C. § 1692k(a)(1). Actual damages under the FDCPA may include loss of time and inconvenience, out of pocket costs and other monetary losses, and emotional distress damages, mental anguish, and suffering.

Further, the Fords seek compensation for any general damages they sustained and are reasonably certain to sustain in the future as a direct result of Nationstar's breach of the covenant of good faith and fair dealing. General damages under Nevada law may include loss of reputation, shame, mortification, indignity, and disgrace.

    **B. Statutory Damages**

The Fords request additional statutory damages pursuant to RESPA. Since Nationstar engaged in a pattern or practice of noncompliance with RESPA's requirements, the Fords ask for an amount of up to $2,000.00 for each RESPA claim. 12 U.S.C. § 2605(f)(1)(B).

Additionally, the Fords request additional statutory damages pursuant to the FDCPA. Nationstar engaged in a pattern of noncompliance and the nature of that noncompliance warrant an amount of up to $1,000.00 for the FDCPA claim. 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(b)(1).

### C. Punitive Damages

The Fords pray for punitive damages on their claim that Nationstar breached the covenant of good faith and fair dealing. Nationstar's conduct was malicious, oppressive, or in reckless disregard of the Fords' rights. *See* NRS 42.005(1). The Fords seek punitive damages in an amount of three times the amount awarded as actual damages, if the amount of actual damages is greater than $100,000.00, otherwise the Fords seek $300,000.00, if the amount of actual damages awarded is less than $100,000.00. NRS 42.005(1)(a) and (b).

### D. Attorney's Fees

The Fords pray for reasonable attorney's fees and costs associated with this matter pursuant to 12 U.S.C. § 2605(f)(3) and 15 U.S.C. § 1692k(a)(3).

**DATED this 15th day of May, 2018.**

Respectfully submitted,

**HAINES & KRIEGER, LLC**

*/s/ David H. Krieger*
David H. Krieger, Esq.
Nevada Bar No. 9086
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Telephone: (708)880-5554
dkrieger@hainesandkrieger.com

**DANNLAW**

*/s/ Daniel M. Solar*
Daniel M. Solar, Esq. [*Pro Hac Vice*]
Ohio Bar No. 0085632
Marc E. Dann, Esq. [*Pro Hac Vice*]
Ohio Bar No. 0039425
Donna J. Taylor-Kolis [*Pro Hac Vice*]
Ohio Bar No. 0002960
P.O. Box 6031040
Cleveland, Ohio 44103
Telephone: (216)373-0539

dsolar@dannlaw.com
mdann@dannlaw.com
dkolis@dannlaw.com
*Counsel for Plaintiffs Georgina Ford and the Estate of Murray D. Ford*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of May, 2018, and pursuant to F.R.C.P. 5(b) a true and correct copy of the TRIAL BRIEF OF PLAINTIFFS GEORGINA FORD AND THE ESTATE OF MURRAY D. FORD was filed via the Court's CM/ECF System and electronically served by the Court on all parties in interest listed as registered users.

*/s/*
Employee of DANNLAW