**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| GEORGINA FORD and THE ESTATE OF MURRAY D. FORD, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONSTAR MORTGAGE, LLC, <br><br> Defendant. | Case No. 2:16-cv-00344-RFB-PAL <br><br> **ORDER** <br><br> Motion for Summary Judgment |

**I.     INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 50.  For the reasons stated below, the Motion is granted in part and denied in part.

**II.     BACKGROUND**

Plaintiffs filed the Complaint on February 19, 2016. ECF No. 1. Defendant filed an Answer on April 18, 2016. ECF No. 13. Defendant filed the instant Motion for Summary Judgment on February 14, 2017. ECF No. 50. Defendant filed a Motion to Supplement [50] Motion for Summary Judgment on April 7, 2017. ECF No. 58. Plaintiffs filed their Response on April 28, 2017. ECF No. 59. Defendant filed its Reply on May 12, 2017. ECF No. 61. The Court held a

hearing to discuss the Motion for Summary Judgment on September 18, 2017. ECF No. 64.

### III. LEGAL STANDARD

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. UNDISPUTED FACTS

The Court finds the following facts to be undisputed. In August 2004, Plaintiffs obtained a promissory note and deed of trust (collectively, the "Loan") on their home at 3204 Grey Dolphin Drive, Las Vegas, Nevada 89117. A Bank of America affiliate originated and initially serviced the Loan. Plaintiffs ultimately defaulted on the Loan and filed for bankruptcy in November, 2009, in order to keep their home. As a result, Plaintiffs entered into a Loan Modification Agreement (the "Modification") with Bank of America in April, 2010. The Modification rolled $22,892.22 of delinquent interest, fees, and costs into the Loan principal and converted the Loan into a step rate

loan, in which the interest rate on Plaintiffs' Loan would increase from 2.000% to 3.000% on specified dates between June 1, 2010 and June 1, 2015; Plaintiffs' monthly payment would increase from $644.87 to $967.30 on those same dates; and those monthly payments would be interest-only (i.e., they would not decrease the principal of the loan). Plaintiffs were also responsible for making monthly escrow payments to cover taxes and insurance on their home. The amount necessary for Plaintiffs' escrow account was based upon the applicable taxes, property value, and insurance costs.

On July 1, 2013, Nationstar began servicing Plaintiffs' Loan. Nationstar is required as servicer to collect the escrow amounts until such sums are paid out to the applicable third parties (e.g., the state or local government and insurer). Escrow amounts change regularly, and Nationstar does not keep any unused funds in escrow accounts. Instead, such funds are typically applied for the benefit of the borrower or, as may be otherwise required, returned to the borrower.

In February 2014, Plaintiffs filed an Adversary Complaint in their bankruptcy against Bank of America and Nationstar, complaining of errors made in the servicing of their account while Bank of America was the servicer. On or about March 13, 2015, Plaintiffs, Bank of America, and Nationstar settled the Adversary Complaint. To that end, the parties entered into a confidential settlement agreement (the "Settlement Agreement").

Bank of America and Nationstar made their respective payments to provide the Settlement Payment to Plaintiffs. As also required, the Holdback Payment was applied to Plaintiffs' Loan. Plaintiffs kept the remaining Settlement Payment. However, in applying the Holdback Payment, Nationstar used an incorrect escrow calculation. This incorrect calculation increased the amount of the escrow, and thus a larger share of the Holdback Payment was applied to the escrow. This also resulted in less of the Holdback Payment being applied to outstanding principal and interest.

As a result, despite the Holdback Payment, Nationstar believed Plaintiffs owed additional amounts.

On or about July 13, 2015, Plaintiffs' attorney sent Nationstar a letter, which he followed with a "Request for Information Pursuant to 12 C.F.R. § 1024.36" (the "RFI") on August 31, 2015, expressing concerns about the Loan and seeking information concerning it, including a transaction history and payoff statement. Nationstar responded to Plaintiffs' correspondence on September 9, 2015, stating that, after conducting an investigation, Nationstar had identified no errors on Plaintiffs' Loan. Nationstar's September 9, 2015 letter also included the Detail Transaction History Plaintiffs had requested, and invited Plaintiffs to provide additional documentation if they still believed there was an error on their Loan. Nationstar provided Plaintiffs with the requested payoff statement on or about September 22, 2015.

On or about September 26, 2015, Plaintiffs, still believing there were errors on their Loan, took Nationstar up on its invitation to obtain additional documentation through a "Notice of Error(s) pursuant to 12 C.F.R. § 1024.35(b); and Request for Information pursuant to 12 C.F.R. § 1024.36" ("NOE #1"), which Plaintiffs sent to Nationstar via certified mail. On September 30, 2015, Plaintiffs sent another "Notice of Error(s) pursuant to 12 C.F.R. § 1024.35(b); and Request for Information pursuant to 12 C.F.R. § 1024.36" ("NOE #2"), again via Certified Mail. NOE #2 reasserted the same errors alleged in NOE #1 and added one additional alleged error. The parties dispute whether Nationstar ever acknowledged or substantively responded to the NOEs.

Ultimately, still believing that there were errors with their Loan, Plaintiffs filed this lawsuit on February 19, 2016, alleging several statutory claims under federal law, as well as state-law claims for breach of contract, breach of the implied duty of good faith and fair dealing, and elder abuse. As a result of the filing of this lawsuit, Nationstar conducted a more thorough internal investigation of Plaintiffs' Loan that ultimately determined in November, 2016 that the escrow

amount had been miscalculated, which caused Plaintiffs' payments to be placed into suspension before being applied, and led to the errors Plaintiffs alleged in their NOEs and this lawsuit. Upon discovering the escrow miscalculation, Nationstar immediately corrected the calculation, and re-applied Plaintiffs' payments correctly. As a result, all of the errors identified in Plaintiffs' NOEs have been corrected and any late fees, charges, and penalties resulting from the escrow miscalculation have been removed.

### V.   DISCUSSION
#### A.  RESPA

Claims 1 through 4 of Plaintiffs' Complaint are for violations of the Real Estate Settlement Procedures Act (RESPA). Defendant argues that there is no private right of action for the provisions of RESPA Plaintiffs cite and even if there is, Plaintiffs have not demonstrated any damages such that their claims could proceed to trial.

##### *1. Legal Standard*

Counts 1 and 2 are for violations of 12 C.F.R. § 1024.35(d), which provides: "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." Counts 3 and 4 are for violations of 12 C.F.R. § 1024.35(e), which provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a

telephone number, for further assistance." Under RESPA, plaintiffs can receive damages for "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 2,000." 12 U.S.C. § 2605(f).

### 2. Discussion

#### a. Private Right of Action

"A plaintiff may only bring a cause of action to enforce a federal law if the law provides a private right of action." Nisqually Indian Tribe v. Gregoire, 623 F.3d 923, 929 (9th Cir. 2010). Therefore, the Court must first determine whether the provisions of RESPA that Plaintiffs bring claims under provide for a private right of action. "The ability to bring a private right of action may be authorized by the explicit statutory text or, in some instances, may be implied from the statutory text." Id. (citing Touche Ross & Co. v. Redington, 442 U.S. 560, 568-77 (1979)). However, the Court may only find an implied private right of action "when there is clear evidence Congress intended such a right to be part of the statute." Id. (citing Transamerica Mort. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 23-24 (1979)).

There is no private right of action explicitly mentioned in the text of 12 C.F.R. § 1024.35 and courts have split on the question of whether borrowers may bring claims for damages based on this subsection. Compare Miller v. HSBC BANK U.S.A., N.A., No. 13-7500, 2015 U.S. Dist. LEXIS 16736, 2015 WL 585589, *11 (S.D. N.Y. Feb. 11, 2015); with, Guccione v. JPMorgan Chase Bank, N.A., No-14-4587, 2015 U.S. Dist. LEXIS 57700, 2015 WL 1968114, *11 (N.D. Cal. May 1, 2015). However, the Consumer Finance Protection Bureau (CFPB) has noted that "regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations." 78 Fed. Reg. 10715 n. 64 (Feb. 14, 2013). As 12 C.F.R. § 1024.35 was promulgated pursuant to section 6 of RESPA, see 78 Fed. Reg. 10737 (Feb. 14, 2013) (discussing legal authority for 12 C.F.R. § 1024.35), it is reasonable to read a private right of action into this regulation. Although the Ninth Circuit has not

yet ruled on this issue, at least one other circuit has agreed with this reasoning. See Lage v. Ocwen Loan Servicing LLC, 839 F.3d 1003, 1007 (11th Cir. 2016) ("If the servicer fails to respond adequately to the borrower's notice of error, then the borrower has a private right of action to sue the servicer under RESPA. 12 U.S.C. § 2605(e)(2), (f)"). Given the remedial purpose of RESPA and the CFPB's statements, the Court agrees with the Plaintiffs that there is a private right of action under § 1024.35.

### b. Damages

Although the Court has determined that there is a private right of action under 12 C.F.R. § 1024.35, Plaintiffs must provide evidence of damages caused by Defendant's violations of subsections (d) and (e) in order to survive summary judgment on these claims. Under RESPA, Plaintiffs can recover any "actual damages" caused by a violation, as well as additional damages not to exceed $2,000 "in the case of a pattern or practice of noncompliance with the requirements of this section." 12 U.S.C. § 2605(f).

The Ninth Circuit has not defined "actual damages" for purposes of RESPA, and courts are divided on whether plaintiffs can recover certain categories of damages under the statute. Several district courts in this circuit have held that borrowers cannot recover actual damages for nonpecuniary losses under RESPA. See Lal v. Am. Home Servicing, Inc., 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010); Allen v. United Fin. Mortg. Corp., No. 09-2507, 660 F. Supp. 2d 1089, 2009 U.S. Dist. LEXIS 83680, 2009 WL 2984170, at *5 (N.D. Cal. Sept. 15, 2009); Shepherd v. Am. Home Mortg. Servs., No. 2:09-1916, 2009 U.S. Dist. LEXIS 108523, 2009 WL 4505925, at * 3 (E.D. Cal. Nov. 20, 2009); Fullmer v. JPMorgan Chase Bank, No. 2:09-cv-1037, 2010 U.S. Dist. LEXIS 3551, 2010 WL 95206, at *6 (E.D. Cal. Jan. 6, 2010). At least two circuits have noted in unpublished opinions that nonpecuniary damages such as pain and suffering and emotional distress could be recoverable under RESPA, provided they are adequately proven. See Houston v.

United States Bank Home Mortg. Wis. Servicing, 505 Fed. Appx. 543, 548 n.6 (6th Cir. November 20, 2012) ("We find nothing in the text of § 2605(f), or in RESPA more broadly, to preclude 'actual damages' from including emotional damages, provided that they are adequately proven"); McLean v. GMAC Mortg. Corp., 398 Fed. Appx. 467, 471 (11th Cir. September 30, 2010) ("Construing the term 'actual damages' broadly, and based on the interpretations of 'actual damages' in other consumer-protection statutes that are remedial in nature, plaintiffs arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under RESPA"). The Seventh Circuit has also held that emotional distress damages are recoverable under RESPA, provided the harm is not "too attenuated from the alleged violation to cross the proximate-cause threshold." Perron v. J.P. Morgan Chase Bank, N.A., 845 F.3d 852, 858 (7th Cir. 2017). Considering Perron and the statutory scheme itself, the Court finds that given the nature of the statute as it relates for example to compliance and the requirement to inform individuals about the correction of errors that emotional distress damages may be available if such damages can be directly linked to the violations of the statute.   The Court will allow Plaintiffs to present evidence of emotional distress at trial, in addition to evidence of pecuniary damages and statutory damages for a pattern or practice of noncompliance.

Plaintiffs have presented some evidence of damages caused by Defendant's violation of § 1024.35(e). Plaintiffs have testified that they had to pay at least some out-of-pocket expenses for pre-litigation costs such as gas and postage to mail the letters to Defendant. They have also testified regarding potential emotional distress damages, including anxiety, depression, embarrassment, and declining mental and physical health. They stated that they refrained from buying a chair lift that Mr. Ford needed to assist with mobility issues because they were worried about making the improperly calculated payments. The Court finds that these potential damages are sufficient to

allow the § 1024.35(e) claims to proceed to trial. However, the Court finds that Plaintiffs have not presented evidence to sufficiently link any of these damages to Defendant violating § 1024.35(d). Even if Defendant failed to respond to Plaintiff within five days as required, Plaintiffs have not demonstrated that they actually suffered as a result of this oversight. The Court will grant summary judgment to Defendant on Counts 1 and 2. Summary judgment is denied as to Counts 3 and 4.

### B. FDCPA

Claim 5 is for a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. Defendant argues that it qualifies for the bona fide error exception to the FDCPA and should be granted summary judgment on claim 5.

#### 1. *Legal Standard*

In general, the FDCPA is a strict liability statute, which makes debt collectors liable even for offenses that are not knowing or intentional. Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1176 n.11 (9th Cir. 2006). However, there is a narrow exception for "bona fide errors." 15 U.S.C. § 1692k(c). In order to qualify for the defense, the debt collector must show by a preponderance of the evidence that its violation: (1) was unintentional; (2) was bona fide (that is, not contrived); and (3) occurred in spite of the fact the defendant maintained procedures reasonably adapted to avoid the "specific error at issue." McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011). "If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." Reichert v. Nat'l Credit Sys., 531 F.3d 1002, 1007 (9th Cir. 2009).

### 2. *Discussion*

Defendant argues that it qualifies for the bona fide error exception based on policies such as training and review that it claims generally prevent mistakes such as the one in this case. Defendant emphasizes that the escrow miscalculation was an inadvertent and rare occurrence. However, based on the fact that Plaintiffs reported the mistake to Defendant twice and had to file the instant lawsuit before Defendant corrected it, the Court finds that there is a question of fact regarding whether Defendant maintained procedures reasonably adapted to avoid the specific error at issue. McCollough, 637 F.3d at 948. Summary judgment is denied as to claim 5.

## C. Breach of Contract

### 1. *Legal Standard*

In order to prevail on a breach of contract claim under Nevada law, Plaintiffs must prove the following elements: (1) a valid contract, (2) a breach by the defendant, and (3) damages resulting from the breach. Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (internal citations omitted).

### 2. *Discussion*

Plaintiffs argue generally that Defendant breached the Loan Modification Agreement and/or Settlement Agreement when it incorrectly calculated the escrow payment and failed to correct the mistake in a timely manner after it was reported. Plaintiffs do not point to any specific terms of a contract that were allegedly breached, however. As Plaintiffs have not provided any specific information regarding how Defendant's mistake constituted a breach of contract, the Court will grant summary judgment to Defendant on Claim 6.

## D. Breach of the Implied Duty of Good Faith and Fair Dealing

### 1. *Legal Standard*

Under Nevada law, an implied covenant of good faith and fair dealing exists in every contract. Pemberton v. Farmers Ins. Exch., 858 P.2d 380, 382 (Nev. 1993). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 923 (Nev. 1991). "To plead this [claim], the plaintiff must allege that: (i) the plaintiff and the defendant were parties to the agreement; (ii) the defendant owed a duty of good faith to the plaintiff; (iii) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (iv) the plaintiff's justified expectations were denied." Laguerre v. Nevada System of Higher Educ., 837 F. Supp. 2d 1176, 1181 (internal citation omitted). Reasonable expectations are to be "determined by the various factors and special circumstances that shape these expectations." Perry v. Jordan, 900 P.2d 335, 338 (Nev. 1995).

### 2. Discussion

Although Plaintiffs have not pointed to specific terms of their contract(s) that Defendant breached, they have raised a question of fact regarding whether there was a breach of the implied covenant of good faith based upon the Settlement Agreement and the Defendant's alleged failure to faithfully and reasonably follow the Agreement, including correcting any identified mistakes in a timely manner. The Defendant does not deny that it agreed to properly apply the Holdback Payment as asserted by the Plaintiff. The Defendant has also acknowledged that it improperly applied this payment in a manner that impacted the escrow amount, principal, and interest. Given the agreement between the parties as to the manner of application of the Holdback Payment, Plaintiff had a reasonable expectation that Defendant would in good faith apply the payment and in good faith correct any noted errors in such application. Plaintiffs have raised a disputed issue of fact as to whether Defendant acted in good faith given its alleged failure to respond to or consider Plaintiffs' notifications of error. Summary judgment is denied as to Claim 7 for breach of the implied duty of good faith and fair dealing.

### E. Elder Abuse

### *1. Legal Standard*

Under Nevada law, "if an older person or a vulnerable person… suffers a loss of money or property caused by exploitation, the person who caused the injury, death or loss is liable to the older person or vulnerable person for two times the actual damages incurred by the older person or vulnerable person." N.R.S. §41.1395.

### *2. Discussion*

The Nevada elder abuse statute is meant to protect older people from "exploitation," an act that requires willfulness. Although Plaintiffs have raised a question of fact regarding negligence in this case, they have not pointed to any evidence that Defendant acted intentionally when it miscalculated their escrow payment and failed to correct the mistake. Therefore, summary judgment is granted to Defendant on Claim 8 for elder abuse.

### VI. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 50) is GRANTED in part and DENIED in part as follows:

- Summary judgment is denied as to claims 3, 4, 5, and 7.
- Summary judgment is granted as to all other claims.

DATED: May 28, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**